IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VIVIAN DIAZ, | : |  |
|  | : |  |
| Plaintiff, | : | Civil No. 10-6510 (JBS/AMD) |
|  | : |  |
| v. | : |  |
|  | : | **OPINION** |
| PATRICK R. DONAHOE, | : |  |
| POSTMASTER GENERAL, UNITED | : |  |
| STATES POSTAL SERVICE | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

APPEARANCES:

Amy B. Sunnergren, Esq.
F. MICHAEL DAILY, JR. LLC
216 Haddon Avenue
#106
Westmont, NJ 08108
    Attorney for Plaintiff

Irene E. Dowdy, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street
Fourth Floor
P.O. Box 2098
Camden, NJ 08101
    Attorney for Defendant

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

This matter is before the Court on a motion for summary judgment [Docket Item 17], brought by Defendant Patrick Donahoe, who is being sued in his official capacity as Postmaster General for the United States Postal Service ("Defendant"). Plaintiff Vivian Diaz alleges that her termination as a transitional postal employee violated Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e, et seq., because she was subjected to intentional employment discrimination on the basis of race (Hispanic), sex (female), and national origin (Puerto Rican). She also alleges that her termination was in retaliation for prior protected activity, namely raising allegations of prior discrimination.

The key inquiries for the Court are whether Plaintiff has adduced admissible evidence from which the finder of fact could reasonably conclude that she was treated differently from "similarly situated" non-minority employees for her discrimination claims, and whether Plaintiff has shown materially adverse employment actions under her retaliation claim. A secondary issue is, to the extent Plaintiff makes out a prima facie case for discrimination or retaliation, whether Plaintiff has proffered admissible evidence from which a reasonable factfinder would conclude that Defendant's asserted legitimate reasons for Plaintiff's termination or other adverse actions were pretextual. Because the Court answers all three questions in the negative, Defendant's motion for summary judgment must be granted.

## II.  Background

### A. Facts

The facts of the case are drawn primarily from the parties' statements of facts and are undisputed, except where noted.

Plaintiff Diaz ("Plaintiff"), a female born in Puerto Rico, began her employment with the U.S. Postal Service ("USPS") in 2006 as a mail handler and, later, a clerk - both considered "casual" positions - at two different facilities. [Pl. Dep. of Vivian Diaz ("Diaz Dep.") at 27:17-29:24.] In October 2008, she was transferred to the Salem (N.J.) Post Office as a "City Carrier (Transitional Employee)," commonly referred to as a "TE city carrier." [Pl. Statement of Material Facts ("Pl. SF") ¶ 1; Def. Statement of Undisputed Material Facts ("Def. SF") ¶¶ 1-2.]

A TE city carrier is a non-career, temporary employee, who delivers and collects mail, by vehicle or by foot, and who sorts ("cases") mail in sequence of delivery along a mail route, among other duties. [Def. SF ¶¶ 2, 6.] These employees may be required to carry shoulder satchels with mail weighing up to 35 pounds, and to load and unload containers of mail weighing up to 70 pounds. [Id. ¶ 6.] A TE city carrier is hired for a term not to exceed 360 calendar days, with a break in service of at least five days between appointments. [Id. ¶ 3.] In contrast to full-time employees, who are assigned regular schedules and routes, and part-time employees, who either are assigned to regular schedules and routes or work flexible hours assigned weekly, TE city carriers do not have fixed routes and receive work assignments as needed, only after efforts to use part-time flexible employees have been exhausted. [Id. ¶¶ 3-5.] TE city

3

carriers are paid an hourly wage, are subject to maximum hour limits, do not receive medical benefits and may be terminated at any time upon completion of their assignment or for lack of available work. [Id. ¶ 5.] They may be temporarily or permanently reassigned to another post office, as needed; the USPS frequently reassigns TEs to give them additional hours and to reduce the number of overtime hours worked by career employees. [Id. ¶¶ 5, 12.] As of March 2009, the Salem Post Office employed three TE city carriers (Plaintiff, Justin Ramsden, and Eric Price) to supplement a workforce of regular and part-time flexible carriers. [Id. ¶¶ 9-11.]

Plaintiff alleges that during her 10 or 11 months in Salem, she was subject to multiple incidents of harassment, discrimination and other slights by her supervisors. In March 2009, the USPS's South Jersey District, which handled human resources matters for the Salem Post Office, transferred John Reese, a customer service supervisor in Delaware, to Salem as a part-time flexible city carrier. [Id. ¶ 14.] Disappointed that she had not had an opportunity to apply for the position, Plaintiff contacted a USPS Equal Employment Opportunity ("EEO") counselor for "pre-complaint counseling" about Reese's reassignment, and asserted that the reassignment constituted discrimination against her on the basis of race, national origin

4

and gender.[1] [Id. ¶ 15; Pl. SF ¶ 21; Def. Ex. M.]

Later, Plaintiff discussed the reassignment with Darryl Hester, the Postmaster of the Salem Post Office. [Def. SF ¶ 10.] Hester told Plaintiff that a hiring freeze was in effect, meaning that the South Jersey District would not have hired a temporary employee as a part-time flexible employee, which was a career position. [Id. ¶ 16.] The South Jersey District had not hired a new career letter carrier since July 2008 and had been filling career vacancies by transferring existing career employees to those posts. [Id. ¶ 8.] Plaintiff was not aware of the hiring freeze and later admitted that had she known about it, she would not have contacted the EEO. [Id. ¶ 16; Diaz Dep. 44:22-45:12.]

Plaintiff asserts that she and Hester discussed other problems she allegedly experienced with Hester's predecessor, Fran Dougherty.[2] [Pl. SF ¶ 22.] Plaintiff testified that she felt harassed by Dougherty because he (1) asked if she had a boyfriend, (2) on occasion assigned other TE city carriers to the route Plaintiff usually covered, and (3) on occasion followed

---

[1] Plaintiff asserts that she filed "an EEO Complaint" regarding the job vacancy and reassignment [Pl. SF ¶ 21], which Defendant denies. [Def. Resp. to Pl. SF ("Def. RSF") ¶ 21.] The deposition testimony and other exhibits supplied by Plaintiff do not support the assertion that Plaintiff actually filed a complaint.

[2] Defendant denies this, pointing to Hester's deposition, in which he testified that he never spoke to Plaintiff about Dougherty. [Def. RSF ¶ 22; Hester Dep. at 28:4-6.]

Plaintiff as she delivered mail. [Diaz Dep. 46:5-50:25.]
Plaintiff states that she never felt sexually harassed by
Dougherty after she told him she had a boyfriend. [Pl. SF ¶ 26.]
Defendant, denying that Plaintiff ever spoke to Hester about
Dougherty, notes, and Plaintiff admits, that postmasters are
required to accompany letter carriers on each delivery route at
least once per year. [Def. SF ¶ 17; Def. RSF ¶ 22.] Defendant
also asserts that Plaintiff never contacted an EEO counselor
about any of Dougherty's alleged conduct. [Def. RSF ¶ 22.]

Plaintiff further claims that she spoke with Hester about
harassment she suffered at the hands of Artannia Moore, the
acting supervisor in Salem.[3] [Pl. SF ¶ 23.] Plaintiff testified
in her deposition that Moore tried to embarrass Plaintiff by
stopping her on her route one day and driving her to see a
customer who had a problem with mail delivery. [Diaz Dep. at
48:23-49:9.] However, the customer told Moore that another
carrier, not Plaintiff, was responsible for the problem. [Pl. SF
¶ 24.]

The next incident involved Moore again and Hester himself.
On April 6, 2009, Plaintiff worked for approximately two and a
half hours before falling ill and reported to Hester that she
needed to go to the hospital. [Def. SF ¶ 19; Pl. SF ¶ 31.]

_____

[3] Defendant denies this, arguing that the record does not
support that Plaintiff ever discussed Moore's conduct with
Hester. [Def. RSF ¶ 23.]

Plaintiff asserts she was crying and complaining of an irregular heartbeat and faults Hester for not calling an ambulance or arranging for her transportation to the hospital.[4] [Pl. SF ¶ 28.] Plaintiff sought treatment and did not return to work that week. [Def. SF ¶ 19.] When Plaintiff returned to work, she was told that her time card would be altered to reflect that she had worked approximately two and a half hours on April 6. [Pl. SF ¶ 30.] Plaintiff viewed this as a slight, but admits that she only worked approximately two and a half hours on April 6, or "[m]aybe less."[5] [Diaz Dep. 55:22-24.] She also was disappointed that, during this and other absences from work in April and early May that Hester did not "follow up . . . to see if there was any assistance that could be offered by the post office . . . ." [Pl. SF ¶¶ 32-33; Def. SF ¶ 20; Def. RSF ¶ 32.]

Plaintiff again felt slighted when, on May 1, 2009, she was assigned to a route with which she was unfamiliar, and as a result it took her longer to complete than was considered necessary. [Pl. SF ¶ 35.] Although Plaintiff complains that it was customary to assign TE city carriers to the same route, she

---

[4] Defendant denies Plaintiff's characterization of the interaction. [Def. RSF ¶ 28.]

[5] Plaintiff also asserts that "[d]espite multiple requests" to view a copy of her "leave slip" to figure out "what actions were being taken regarding her illness and her sick time, defendant refused . . . ." [Pl. SF ¶ 34.] Defendant denies this [Def. RSF ¶ 34], and there is no support for this contention in Plaintiff's deposition testimony or elsewhere in the record.

also admits that TE city carriers are not assigned set routes the
way career employees are. [Id. ¶ 37; Pl.'s Resp. to Def. SF ¶ 4.]
Plaintiff felt further harassed the next day when she was
assigned part of a route normally handled by a full-time carrier,
who was absent that day, in addition to part of her "regular"
route.[6] [Pl. SF ¶¶ 38-39; Diaz Dep. at 59:12-14.]

The next week, on May 8, Plaintiff fell while delivering
mail, injuring her knees and clavicle. [Def. SF ¶ 21.] She
received treatment at an emergency room and did not report to
work for an extended period of time. [Id. ¶¶ 21, 26.] USPS policy
dictates that Postmasters or supervisors accommodate employees
who have been injured on the job by creating light duty or
limited duty assignments to reflect the injured employee's
physical restrictions. [Pl. SF ¶¶ 44-47.] On July 30, 2009, the
South Jersey District human resources department received a
report from Plaintiff's physician, clearing Plaintiff to work
consistent with the following restrictions: driving up to six
hours a day, lifting or carrying 35 pounds for up to six hours a
day, and pulling or pushing 15 pounds for up to six hours a day.
[Def. SF ¶ 27.] The next day, Hester prepared an "Offer of

----

[6] Defendant asserts that the full-time carrier who normally
handled that route was absent from work on May 2, necessitating
flexible coverage. [Def. RSF ¶ 38.] Plaintiff claims she
requested assistance to cover the additional partial route, but
was denied. [Pl. SF ¶ 41.] Defendant disputes this
characterization. [Def. RSF ¶ 41.]

Modified Assignment" for Plaintiff that included some driving and some sorting of mail. [Id. ¶ 28.] Plaintiff refused the offer, asserting that she was having additional difficulty with her knee and sought further medical consultation. [Pl. SF ¶ 48.] On August 7, Hester prepared a second offer of limited duty assignment, which included some driving, some casing and some collection of mail, based on restrictions dictated in new report from Plaintiff's physician, and Plaintiff accepted this assignment. [Id. ¶ 49; Def. RSF ¶ 49; Def. Ex. T.] Plaintiff worked for approximately four and a half hours on August 8, but found she could not sufficiently bend her knee or carry heavy items without pain, and did not work again for approximately two weeks. [Def. SF ¶ 31; Pl. SF ¶ 50.]

Plaintiff's physician prepared a new report on August 17 that restricted permissible activity for Plaintiff even more. [Def. SF ¶ 32.] Plaintiff was not permitted to drive, but could sit for up to eight hours a day, stand and walk for two hours a day, bend or stoop six hours a day, and lift, carry, pull or push 15 pounds for up to six hours a day. [Id.] The next day, Hester prepared a third limited duty assignment, which included filing, sweeping, mopping, emptying trash cans, dusting, inspecting vehicles and other duties. [Id. ¶ 33.] Plaintiff believed sweeping and mopping would be stressful on her knees, and her physician created a new report indicating that Plaintiff could

not sweep, mop, empty trash cans, dust, bend, stoop or lift, in addition to the other restrictions. [Id. ¶ 34.]

On August 24, Plaintiff returned to the job on a more regular basis, working four hours or less several times per week. [Id. ¶ 37.] However, Plaintiff complains that her hours were concentrated in the afternoon, and she asserts that the only work she was permitted to do was "sit[] at a desk looking at the wall . . . ." [Pl. SF ¶¶ 54-57.] Defendant denies this characterization, and points to the offer of limited duty assignment on August 24, which lists several jobs for Plaintiff to do; however, that report is marked up by Plaintiff's physician, indicating that Plaintiff was not physically capable of doing all of the work suggested on the offer of limited duty assignment. [Def. RSF ¶ 56; Def. Ex. Y.]

In the meantime, the Salem Post Office was undergoing changes. In June 2009, Hester was informed that the South Jersey District was reassigning an existing career employee to fill a vacant full-time regular city carrier position and that TE city carrier Justin Ramsden would be reassigned to the Haddonfield (N.J.) Post Office. [Def. SF ¶ 23.] Hester also was informed around that time that the USPS, which conducted twice-yearly evaluations of carrier routes, would be adjusting Salem's five carrier routes down to four, due to a decline in mail volume. [Id. ¶ 24.] Consequently, staffing would be reduced and Salem

10

would lose all remaining TE city carrier employees. [Id. ¶ 25.]
Hester negotiated for Salem to retain its TE city carriers
through Labor Day. [Id.] After Labor Day, TE city carrier Eric
Price would be reassigned to the Woodstown (N.J.) Post Office.[7]
[Id. ¶ 38.] Hester stated in his declaration that he discussed
Plaintiff's status with the Post Office Operations Manager,
including how her condition prevented her from performing
essential duties of a TE city carrier. [Def. SF ¶ 39.] On
September 15, 2009, Hester gave Plaintiff a notice of
termination. [Def. SF ¶ 40.] The letter stated: "The reason for
termination is due to the most recent route minor adjustments
that was performed. As a result to the new scheduled work load,
The staffing must be reduced in order to provide necessary work
for the career employees." [Def. SF ¶ 40; Def. Ex. Z.]

     Plaintiff asserts that she was still able to case, or sort,
mail [Pl. SF ¶ 58], but Defendant responds that Hester understood
the restrictions from her physician to mean that Plaintiff should
not be assigned to casing mail. [Def. RSF ¶ 58.] Plaintiff

---

     [7] Plaintiff admits as true all of the facts in Defendant's
statement of material facts, ¶¶ 1-36. Plaintiff does not admit,
deny, acknowledge or respond in any way to ¶¶ 37-41. According to
current L. Civ. R. 56.1(a), "any material fact not disputed shall
be deemed undisputed for purposes of the summary judgment
motion." See also Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26
(D.N.J. 2000) (citing the previous L. Civ. R. 56.1 for this
proposition). Therefore, all facts in Defendant's statement of
material facts ¶¶ 37-41 that are not otherwise contradicted in
Plaintiff's statement of material facts, will be deemed admitted.

suggests that Eduok Uwah, a Salem supervisor, would have been able to use Plaintiff to case mail, except Hester told him Plaintiff could not perform that task. [Pl. SF ¶ 58.] Defendant accurately responds that Uwah's deposition does not support that statement; rather, Uwah stated that Hester told him Plaintiff could not case mail, and Uwah added that career carriers would object when others cased mail for them, because that took work away from them. [Uwah Dep. at 35:17-36:19.] Uwah did not state that he could have used or intended to use Plaintiff to case mail but for Hester's statement.

Plaintiff further asserts she could have been reassigned to Bellmawr, N.J., because her boyfriend told her that the Bellmawr Post Office had sufficient light duty work for her. [Pl. SF ¶¶ 62, 64.] Defendant objects that Plaintiff's boyfriend's statements are hearsay and no other evidence in the record supports Plaintiff's contention about available work in Bellmawr. [Def. RSP ¶¶ 62, 64.] Plaintiff claims that when she told Hester she could have been transferred to another office, he did not respond to Plaintiff's satisfaction.[8] [Pl. SF ¶ 65.] Plaintiff faults Hester for not inquiring outside of Salem to see if Plaintiff could be reassigned [Pl. ¶ 63], but Hester's deposition

---

[8] Plaintiff's deposition testimony on this point consists of: "When I tell him [Hester] that he could have sent me to other office to light-duty work he didn't." Diaz Dep. at 99:24-25.

testimony does not support this point.[9] It is undisputed that Hester told Plaintiff that if a temporary employee wished to have another 360 day term assignment, she was expected to contact personnel to check availability. [Id. ¶ 66.]

**B. Plaintiff's Complaint**

Plaintiff's Complaint includes four civil rights claims. Count One alleges that the Defendant's actions constituted discrimination based on race, in violation of 42 U.S.C. § 2000e-2(a), which states:

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

---

[9] Plaintiff cites a portion of Hester's deposition testimony to support this contention ("Exhibit D, 14:31-24"); however, the testimony on page 14 concerns the mechanics of an employee's daily duties. The Court cannot find any testimony by Hester that indicates whether he inquired outside of Salem to see if other offices had work Plaintiff could perform. He did testify, however, that if an employee wanted to have another assignment, the employee should contact personnel to see if there were any availability. [Hester Dep. at 93:6-9.] Hester also testified that the procedure to look for work within the employee's craft and then outside their craft, and then to other locations did not apply to Plaintiff at the time, due to union contractual issues and overstaffing. [Id. at 143:8-145:1.]

Count Two alleges discrimination on the basis of sex under the same provision. Count Three alleges that Defendant retaliated against her for making charges of discrimination, under 42 U.S.C. § 2000e-3(a). Count Four, like Counts One and Two, alleges discrimination on the basis of national origin under 42 U.S.C. § 2000e-2(a).

## III.  Discussion

### A. Standard of Review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit; disputes over irrelevant or unnecessary facts will not prevent the entry of summary judgment. <u>Id.</u> The court will view evidence in the light most favorable to the non-moving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. <u>Hunt v. Cromartie</u>, 526 U.S. 541 (1999). "[U]nsupported allegations" in memoranda and pleadings "are insufficient to repel summary judgment." <u>Schoch v. First Fid. Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990).

### B. Employment discrimination claims under Title VII

An employee claiming that her termination was the result of discrimination in violation of Title VII is subject to the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Sanborn v. Postmaster General of the United States, 431 Fed. Appx. 188, 190 (3d Cir. 2011) (setting forth the standard for employment discrimination in a case in which a former postal worker alleged her termination was the result of discrimination on the basis of race, sex and disability). McDonnell held that a complainant establishes a prima facie case for discrimination by showing (1) he belonged to a protected class, (2) he applied and was qualified for a job for which the employer sought applicants, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants. McDonnell, 411 U.S. at 802. The Supreme Court later clarified that McDonnell did not create "an inflexible formulation" to establish a prima facie case and that the proof required will necessarily change in different factual situations. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977); see also McDonnell, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). The Third Circuit has held that "some showing must be made that

15

the plaintiff was treated differently from similarly situated individuals" of different races, gender or national origin. Jackson v. U.S. Steel Corp., 624 F.2d 436, 440-41 (3d Cir. 1980).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell, 411 U.S. at 802. See also Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (articulating the burden-shifting scheme). The employer must introduce evidence which, if taken as true, would permit the conclusion that a nondiscriminatory reason motivated the adverse employment action. Fuentes, 32 F.3d at 763 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). This burden is "relatively light." Id.

When an employer articulates a nondiscriminatory reason for the adverse employment action and introduces evidence in support thereof, the burden shifts back to the plaintiff, who may defeat summary judgment by pointing "to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764 (citing Hicks, 509 U.S. at 510-11). The plaintiff must demonstrate by a preponderance of the evidence that the proffered reason is pretextual and that the

16

true reason is discriminatory or retaliatory. <u>Sanborn</u>, 431 Fed.
Appx. at 190. <u>See</u> <u>also</u> <u>Fuentes</u>, 32 F.3d at 764 (rejecting the
contentions that a plaintiff may argue merely that the factfinder
may disbelieve the defendant or that the plaintiff must adduce
evidence directly contradicting the defendant's proffered
legitimate explanations). The plaintiff's evidence rebutting the
articulated legitimate reasons must permit a factfinder
reasonably to infer that "<u>each</u> of the employer's proffered non-
discriminatory reasons . . . was either a <u>post</u> <u>hoc</u> fabrication or
otherwise did not actually motivate the employment action . . .
." <u>Fuentes</u>, 32 F.3d at 764 (citing <u>Loque v. Int'l Rehab. Assocs.</u>
<u>Inc.</u>, 837 F.2d 150, 155 (3d Cir. 1988) and <u>Anderson v. Baxter</u>
<u>Healthcare Corp.</u>, 13 F.3d 1120, 1124 (7th Cir. 1994)). The
plaintiff must demonstrate that the employer's legitimate reasons
contain "weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions" such that a reasonable
factfinder could rationally find the proffered reasons "unworthy
of credence." <u>Id.</u> at 765 (citing <u>Ezold v. Wolf, Block, Schorr &</u>
<u>Solis-Cohen</u>, 983 F.2d 509, 531 (3d Cir. 1992)).

### C. Prima facie case of discrimination

Defendant argues that Plaintiff cannot make out a prima
facie case of discrimination. [Def. Br. at 13.] Defendant
concedes that Plaintiff is a member of a protected class, as a
female, Hispanic and a person of Puerto Rican origin, and that

her termination qualifies as a materially adverse employment action. [Id.] But Defendant asserts that Plaintiff cannot establish the other necessary elements of a prima facie case. First, Defendant argues that at the time of her termination, Plaintiff "was not qualified to perform the basic duties of a TE City Carrier, i.e., to deliver and collect the mail by vehicle and on foot." [Id.] Second, Defendant argues that she was not treated differently than similarly situated individuals not belonging to the same protected classes, because the other TE city carriers who were reassigned were "fully able-bodied and physically capable of performing the regular duties of a TE City Carrier." [Id. at 14.] Defendant suggests that Plaintiff alleged no facts tending to show that Plaintiff's termination was actually motivated by class-based discrimination or retaliation. [Id.]

Plaintiff disputes the assertion that because Plaintiff was unable to perform regular TE city carrier duties that she cannot establish a prima facie case of discrimination. Plaintiff asserts, without citations to the record, that at the time of termination, Plaintiff was undergoing treatment and Hester "had no knowledge of what the future entailed." [Pl. Br. at 8.] Plaintiff contends that Hester should have looked within the "clerk craft" to find Plaintiff work, if none could be found within the mail-handler or carrier crafts, first within the Salem

18

Post Office and then at other post offices. [Id. at 8-9.]
Plaintiff argues that by showing that other TE city carriers were
reassigned, rather than terminated, Plaintiff establishes a prima
facie case of discrimination. [Id. at 9-10.]

Defendant replies that there is no USPS policy that
establishes that Postmasters must look to different crafts or
other post offices to find work for TE city carriers, and
Plaintiff has not adduced evidence to establish that fact. [Def.
R. Br. at 4-6.] Rather, transitional employees may be terminated
at any time upon completion of their assignment or for lack of
available work. [Id. at 6, Def. Ex. B at 5.] Hester testified
that the procedure to search for work outside of the employee's
craft or post office did not apply to Plaintiff, because of union
contractual issues and overstaffing. [Hester Dep. at 143:8-
145:1.]

The key inquiry here is whether Plaintiff was treated
differently from similarly situated individuals who were not
members of Plaintiff's protected class. Plaintiff's own arguments
demonstrate that she was not. Plaintiff's request for relief is
predicated on the fact that she could and should have been
assigned to do work other than that of a typical TE city carrier
in a post office outside of Salem. Plaintiff even suggests that
Hester should have looked outside the letter carrier craft to
find work suitable for someone in Plaintiff's physical condition.

19

[Pl. Br. at 8-9.] But Plaintiff's lawsuit depends on the fact that the other TE city carriers benefitted from favorable treatment that was denied to her, as a direct result of the employer's invidious discrimination. Here, Plaintiff cannot show that similarly situated TE city carriers received different treatment, because Plaintiff admits that both Price and Ramsden were reassigned to perform regular duties of a TE city carrier, some of which she could not perform, and both were without the physical restrictions Plaintiff had at the time. [Def. Br. at 14; Pl. Br. at 9.]

The Third Circuit has not stated precisely how "similarly situated" plaintiffs must be to other employees with which they wish to compare themselves. However, district courts in the Third Circuit, as well as the majority of Courts of Appeals in other circuits have consistently held that, to establish a prima facie case of discrimination, employees must be similar in all material respects. See Lopez v. Alrod Enters., Inc., 602 F. Supp. 2d 604, 610 n.8 (E.D. Pa. 2009) (citing cases from U.S. Courts of Appeals in the First, Second, Fifth, Sixth, Seventh, and Eighth circuits holding that employees must be similar in "all material respects," "in all respects," in "circumstances nearly identical," or without "differentiating or mitigating circumstances"); see also Gray v. City of Jacksonville, No. 12-10974, 2012 WL 4786187, at *3 (11th Cir. Oct. 9, 2012) ("To make

20

a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are <u>similarly</u> <u>situated</u> <u>in</u> <u>all</u> <u>relevant</u> <u>respects</u>.") (emphasis in original); <u>Lucero v. Sandia Corp.</u>, No. 11-2028, 2012 WL 3667449, at *5 (10th Cir. Aug. 28, 2012) (holding that the plaintiff and non-minority employees must be "similar in all material respects"); <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006) (holding that "similarly situated" means similar "in all material respects"); <u>Devine v. Prudential Ins. Co. of Am.</u>, No. 03-3971, 2007 WL 1875530, at *22 (D.N.J. June 28, 2007) (holding that a similarly situated person "must be similarly situated in all material respects," citing <u>Shumway v. United Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997)); <u>Fullman v. Henderson</u>, 146 F. Supp. 2d 688, 697 (E.D. Pa. 2001), <u>aff'd</u>, 29 Fed. Appx. 100 (3d Cir. 2002) (holding that "similarly situated" requires persons to be "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

Price and Ramsden were different from Plaintiff in one essential respect: they could perform TE city carrier work without restriction and Plaintiff could not. [Diaz Dep. at 96:1-98:25.] Plaintiff admits in her testimony that she was unable to lift trays of mail, that she could not go up and down stairs, and that she could not drive a postal truck. [<u>Id.</u> at 96:1-25.]

21

Plaintiff cannot name any TE city carrier who was sent to another office to do light-duty work, the kind of transfer to which she claims she was entitled. [Id. at 97:23-25.] In the end, Plaintiff does not seek the treatment Price and Ramsden received; she seeks placement in other post offices doing work not exclusively in the carrier craft but "secretary work," "office work," or "clerk work." [Id. 98:5-25.] Her physical condition, which had prevented her from performing as a fully functioning TE city clerk for four months, was a material factor for her employer to consider when making transfer or hiring decisions, especially considering that transitional employees may be terminated at any time following completion of an assignment or for lack of available work, and each year transitional employees must be given a "break" before being rehired for a new term. Therefore, Plaintiff is unable to establish that similarly situated employees were treated differently than she was, and thus she fails to establish a prima facie case of discrimination.

Plaintiff argues that Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) stands for the proposition that Plaintiff can be a "class of one," when no other injured TE city carrier exists for comparison. [Pl. Br. at 9.] However, in that case the Supreme Court held that an equal protection claim could be brought by a "class of one . . . where the plaintiff alleges that she has been intentionally treated differently from others

22

similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook, 528 U.S. at 564. As explained above, Plaintiff here cannot show she was intentionally treated differently from others similarly situated and that no rational basis exists for that treatment. Even setting aside the "similarly situated" language quoted above, the fact that Plaintiff had significant physical restrictions was at least a rational basis for treating her differently than other transitional employees who had no restrictions.

Because the evidence, even considered in the light most favorable to Plaintiff, has failed to establish a prima facie case of discrimination, Defendant is entitled to summary judgment on Counts One, Two and Four of the Complaint.

### D. Employer's legitimate reasons for termination

Even if the Court were to assume, arguendo, that Plaintiff established a prima facie case of discrimination, Defendant would still be entitled to summary judgment because Defendant has articulated legitimate reasons for her termination, supported by evidence, and Plaintiff cannot show by a preponderance of the evidence, even giving Plaintiff all reasonable favorable inferences from the facts, that the proffered reasons are pretextual.

Defendant has shown that the South Jersey District eliminated all TE city carrier positions from Salem and

Plaintiff's services were no longer needed. In addition, Defendant has shown that the Postmaster need not accommodate transitional employees as if they were career employees; transitional employees may be terminated at any time upon completion of an assignment or for lack of available work, and thus Hester owed no duty to Plaintiff to reassign her to another post office, particularly in a different craft. Defendant also has shown that Plaintiff, at the time of termination, was not physically capable of performing her job, justifying her termination and distinguishing her treatment from that of other TE city carriers who were transferred out of Salem.

Plaintiff has neither cast sufficient doubt on these reasons, nor shown that invidious discrimination was more likely than not the motivating or determinative cause of her termination. From the evidence of record, Plaintiff cannot show by a preponderance of the evidence that Defendant's proffered reasons are pretextual. Plaintiff's brief does not even argue the point; Plaintiff's brief merely responds to Defendant's argument that Plaintiff failed to establish a prima facie case.

The record contains descriptions of a number of incidents in which Plaintiff's supervisors behaved in a manner that upset her or made Plaintiff uncomfortable. But such anecdotes fall well short of showing that Plaintiff's termination was more likely than not a result of her employer's animus on the basis of race,

24

gender or national origin. Nothing in the record suggests a reasonable factfinder could find that Defendant's explanations for Plaintiff's termination contain weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions, or that they were post hoc fabrications or did not actually motivate the employment action. Therefore, even if Plaintiff were able to establish a prima facie case of discrimination, she has not made the requisite evidentiary showing to defeat a motion for summary judgment.

### E. Retaliation

Retaliation claims are governed by the same McDonnell burden-shifting scheme described supra, Part II.B. Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). To establish a prima facie case of retaliation, an employee must show "(1) protected employee activity; (2) adverse action by the employer either after or cotemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Id. (quoting Fogelman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)).

Under the antiretaliation provision of Title VII, a plaintiff shows she was subject to an "adverse action" by showing that "a reasonable employee would have found the challenged action materially adverse," meaning that "it well might have

dissuaded a reasonable worker from making or supporting a charge
of discrimination." Burlington N. & Santa Fe Ry. Co. v. White,
548 U.S. 53, 67-68 (2006). This is an objective standard and
distinguishes "significant from trivial harms." Id. at 68. Title
VII does not protect employees from "petty slights, minor
annoyances, and simple lack of good manners," nor from "the
ordinary tribulations of the workplace, such as the sporadic use
of abusive language, gender-related jokes, and occasional
teasing," nor from common personality conflicts that "generate
antipathy and snubbing by supervisors and co-workers." Id.
(internal quotation marks omitted).

A "causal connection" between the materially adverse action
and the retaliation may be established by a "broad array of
evidence" and

> [w]here the time between the protected activity and
> adverse action is not so close as to be unusually
> suggestive of a causal connection standing alone,
> courts may look to the intervening period for
> demonstrative proof, such as actual antagonistic
> conduct or animus against the employee . . . or other
> types of circumstantial evidence . . . that give rise
> to an inference of causation when considered as a
> whole.

Id. at 302 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 921
(3d Cir. 1997) and Farrell v. Planters Lifesavers Co., 206 F.3d
271, 280-81 (3d Cir. 2000)).

Plaintiff has satisfied the first prong of the standard: she
engaged in protected activity when she met with an EEO counselor

and articulated charges of discrimination.

Concerning the second prong, Plaintiff alleges three retaliatory actions in her opposition brief: (1) Hester ignored Plaintiff when she was sick, (2) Hester ignored her physical restrictions and attempted to assign Plaintiff work that would stress her knee, and (3) Hester claimed there was no work to give Plaintiff. [Pl. Opp'n at 12.]

The first claimed alleged retaliatory action may be rejected out of hand. Plaintiff complains that Hester "did not offer to call an ambulance or make any other arrangement for Diaz to go to the hospital" when she was sick at work and, during this and other medical absences, "did not follow up with Diaz to see if there was any assistance that could be offered by the post office . . . ." [Pl. SF ¶¶ 28, 33.] At most, these are examples of the kind of "antipathy" or "snubbing" or "lack of good manners" that the Supreme Court has said is not actionable under Title VII. Plaintiff has adduced no evidence that Hester was under a duty to help Plaintiff get to the hospital, let alone that his failure to help was a reaction to her meeting with an EEO counselor. Plaintiff admits that transitional employees do not receive health insurance or other such benefits. Plaintiff has not shown that a reasonable factfinder could conclude that Hester's conduct regarding her sickness constituted a materially adverse action that would dissuade a reasonable worker from making or supporting

27

a charge of discrimination. Thus, Plaintiff cannot sustain a
retaliation claim based on this conduct.

Plaintiff next argues that Hester ignored her medical
restrictions and offered work that would cause stress on her
knees. The record does not suggest that Hester, in fact, ignored
Plaintiff's condition, or that Hester's actions were materially
adverse to Plaintiff in this case. Plaintiff was free to reject
an offer of limited duty or raise concerns about any of the
assigned tasks to Hester, both of which she did. [Def. SF ¶¶ 28,
34.] Each time Plaintiff provided the post office with a note
from her physician, Hester, in a timely manner, responded with an
offer of limited assignment that reasonably accommodated the
physician's limitations. It is not materially adverse, as
Plaintiff suggests, to propose that Plaintiff sweep or mop in
response to a physician report that cleared Plaintiff to stand
and walk for two hours a day, or bend and stoop for six hours a
day, or push or pull up to 15 pounds for six hours a day. [Def.
SF ¶¶ 32-33.] That Hester devised a work assignment with sweeping
and mopping does not show that he "did his best to ignore the
restrictions" of Plaintiff's physician. [Pl. Opp'n at 12.] Hester
believed that a restriction of "0 hours per day" of pushing or
pulling mail precluded Plaintiff from being assigned to case
mail. [Def. Ex. H; Hester Decl. ¶ 19.] This evidence cannot
establish a prima facie case of retaliation on Hester's alleged

disregard for Plaintiff's physical restrictions.[10]

Plaintiff also argues that Hester "claimed that there was no work to give [Plaintiff], even though his supervisor testified that he would have been able to find work for her if he had been told of the restrictions." [Id.] Plaintiff claims that, after Hester eliminated physically taxing tasks from Plaintiff's assignments, she was left to "sit[] at a desk looking at the wall as [Hester] would not even let her answer the telephone." [Pl. SF ¶ 56.] Plaintiff suggests that her supervisor, Uwah, would have assigned her to case mail or to perform other tasks, but for Hester's directive to Uwah that she could not deliver or case mail and Hester did not further articulate Plaintiff's restrictions. [Pl. Opp'n at 12.] Uwah's deposition does not support that charge. Uwah testified that Hester told him that Plaintiff could not deliver or case mail, and that contributed to his assigning her to afternoon hours. [Uwah Dep. at 35:15-25.] He testified he did not recall specifically discussing Plaintiff's limitations with Hester, and that he and Hester did not sit down to parse her limitations. [Id. at 35:15-21.] Uwah further testified that when he assigned workers to case mail, he would

---

[10] Even if Plaintiff's unsupported allegation that Hester ignored her physician's restrictions could be construed to establish a prima facie case of retaliation, under McDonnell, Plaintiff has failed to show, by a preponderance of the evidence, that Hester's conduct was retaliatory. Rather, the record shows that Hester reacted reasonably to Plaintiff's physician's restrictions, and Plaintiff does not rebut Defendant's evidence.

receive objections that he was taking casing time away from other employees. [Id. at 36:7-19.] Uwah did not testify that he would have been able to find work for Plaintiff if he had been told of her restrictions.

Plaintiff does not articulate how her limited duty assignments were materially adverse to her. She does not specify what work Uwah would have been able to find her, but she seems to suggest that more work or different work was available, and she would have preferred those assignments to what she received. Plaintiff does not argue that she was assigned an unreasonably insufficient number of hours or that she was not compensated for her time she spent at work. Because Plaintiff fails to show how her assignments were materially adverse, she cannot establish a prima facie case for retaliation.

Even if Plaintiff were able to make a prima facie for retaliation based on this conduct, the facts in evidence fail to show a causal link between her protected activity and Defendant's conduct. No reasonable factfinder could find a retaliatory motivation in Hester's alleged failure to find Plaintiff work that she preferred. Defendants show that transitional employees receive assignments as needed and may be terminated at any time upon completion of an assignment or for lack of available work. [Hester Dep. at 34:23-35:23, 53:10-18; Def. Ex. B at 5.] The post office does not have the same obligation to accommodate

limitations of transitional employees as it does career employees. [Hester Dep. at 143:13-24.] Indeed, Defendant shows that transitional employees may be assigned to work in other crafts only in limited circumstances [Def. Ex. B at 4], and Hester testified that union contractual issues and overstaffing at Salem prevented him from reassigning work from clerks to Plaintiff, who was a letter carrier. [Hester Dep. at 143:8-24, 144:10-145:1.] Hester received weekly staffing analysis reports, which indicated that he had too many employees for the volume of mail the post office had to handle, and Hester made assignments based, at least in part, on that analysis. [Id. at 145:8-18.] Hester may not have gone out of his way, or bent the rules, to find acceptable work for Plaintiff, but Plaintiff, as a transitional employee, was not entitled to better treatment. Plaintiff has not adduced evidence to show that Hester was obligated to accommodate her or that his failure to do so was causally linked to her meeting with an EEO counselor, rather than from fatigue from trying to find Plaintiff suitable limited duty work that would not elicit objections from her or her physician. See id. at 139:15-24 (describing the difficulty of finding assignments for Plaintiff, that she rejected multiple assignment offers, and that she had been out of work for an extended period of time). Therefore, even if the Court were to hold that Plaintiff made a prima facie case of retaliation based on this

31

conduct, Defendant still would be entitled to summary judgment.

Although not articulated in so many words in her opposition brief, Plaintiff's statement of material facts includes even more examples of behavior Plaintiff considered retaliatory. They are: (1) Hester failed to provide Plaintiff with her leave slip [Pl. SF ¶ 34], (2) Plaintiff was reassigned to a route with which she was unfamiliar [Pl. SF ¶ 35], (3) Plaintiff was assigned part of a route that normally was handled by another employee and Moore refused to assign other workers to help Plaintiff cover the partial route [Pl. SF ¶¶ 38, 41], and (4) Plaintiff was terminated. [Pl. SF ¶ 60.]

Plaintiff's allegation that she was not provided her leave slip is unsupported by the cited portion of Plaintiff's deposition. The cited testimony does not concern a leave slip or Plaintiff's sickness but rather Plaintiff's assignment to cover for a career employee who was absent that day. The Court need only consider cited materials, <u>Ullrich v. U.S. Sec'y of Veterans Affairs</u>, 457 Fed. Appx. 132, 137 (3d Cir. 2012), but may consider other materials in the record, and the Court does not see any deposition testimony from Plaintiff supporting this allegation. Plaintiff's evidence of record cannot establish a prima facie case based on this conduct.

Plaintiff's complaints related to her route assignments concern behavior squarely within the supervisor's discretion when

assigning transitional employees work. There is no evidence to show that Plaintiff's assignments were a direct response to Plaintiff's protected activity. A reasonable employee would not be dissuaded from making or supporting a charge of discrimination based on two isolated assignment shifts, which are to be expected for transitional employees. In this case, one assignment shift was in response to the absence of the regular mail carrier that day. [Diaz Dep. at 59:9-15.] Two instances of route reassignments in Plaintiff's entire employment at Salem do not raise suspicion of her employer's retaliatory motive. Any hope or expectation, as a transitional employee, that she could not be reassigned to new routes or duties is fatuous. Thus, conduct related to Plaintiff's assignments does not constitute materially adverse action capable of supporting a prima facie case of retaliation.

Finally, Plaintiff's Complaint and opposition brief could be construed to assert that her termination was retaliatory for her protected activity. Termination is a materially adverse action. However, for the reasons discussed supra, Parts II.C & D, even if Plaintiff establishes a prima facie case of retaliation based on her termination, she has not shown by a preponderance of the evidence that Defendant's proffered explanations for her termination - downsizing at the post office and her inability to perform all regular tasks of a TE city carrier - are pretextual. Therefore, insofar as Plaintiff asserts this claim under Count

Three, Defendant is entitled to summary judgment.

## IV.  Conclusion

Plaintiff has not raised a genuine factual dispute that she was treated differently from "similarly situated" non-minority employees, and thus she cannot establish a prima facie case of discrimination under Counts One, Two or Four. Even assuming, arguendo, that Plaintiff could establish a prima facie case of discrimination, she has not raised a genuine factual dispute that Defendant's asserted reasons for her termination were pretextual, and thus, Defendant is entitled to summary judgment on Counts One, Two and Four. Similarly, Plaintiff has not adduced evidence from which a reasonable factfinder could find a prima facie case of retaliation because her Complaint and opposition brief do not assert materially adverse employment actions. To the extent her Complaint can be construed as alleging materially adverse actions, the evidence does not suggest that a causal link can be inferred between her protected activity and the adverse actions. Therefore, Defendant is entitled to summary judgment on Count Three. An appropriate order will be entered.


**January 3, 2013**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge


34